# EXHIBIT 1

## *2:21cv794, Chapman Et Al V. Ford Motor Company*

US District Court Docket

United States District Court, Wisconsin Eastern

(Milwaukee)

**This case was retrieved on 08/18/2021**

# Header

| | |
|---|---|
| **Case Number:** 2:21cv794 | **Class Code:** Open |
| **Date Filed:** 06/25/2021 | **Statute:** 15:2301 |
| **Assigned To:** Magistrate Judge Stephen C Dries | **Jury Demand:** Both |
| **Nature of Suit:** Motor Vehicle (350) | **Demand Amount:** $0 |
| **Cause:** Magnuson-Moss Warranty Act | **NOS Description:** Motor Vehicle |
| **Lead Docket:** None | |
| **Other Docket:** None | |
| **Jurisdiction:** Federal Question | |

## Litigants                                           Attorneys

Jeremy Chapman
**Plaintiff**

Anthony P Chester
ATTORNEY TO BE NOTICED
Kazerouni Law Group APC
120 S 6th St - Ste 2050
Minneapolis, MN  55402
USA
952-225-5333 Email:Tony@kazlg.Com

Kemoy Fong
[Terminated: 08/10/2021]
**Plaintiff**

Anthony P Chester
ATTORNEY TO BE NOTICED
Kazerouni Law Group APC
120 S 6th St - Ste 2050
Minneapolis, MN  55402
USA
952-225-5333 Email:Tony@kazlg.Com

Paul Pilof
**Plaintiff**

Anthony P Chester
ATTORNEY TO BE NOTICED
Kazerouni Law Group APC
120 S 6th St - Ste 2050
Minneapolis, MN  55402
USA
952-225-5333 Email:Tony@kazlg.Com

Ford Motor Company
**Defendant**

Aleena K Wilson
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Bowman and Brooke LLP
150 S 5th St - Ste 3000
Minneapolis, MN  55402
USA
612-339-8682 Fax: 612-672-3200

Roshan N Rajkumar
ATTORNEY TO BE NOTICED
Bowman and Brooke LLP
150 S 5th St - Ste 3000
Minneapolis, MN  55402
USA

2:21cv794, Chapman Et Al V. Ford Motor Company

## Litigants

## Attorneys

612-339-8682 Fax: 612-672-3200
Email:Roshan.Rajkumar@bowmanandbrooke.Com

## Proceedings

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| 1 | 06/25/2021 | COMPLAINT with Jury Demand; against All Defendants by Jeremy Chapman, Paul Pilof, Kemoy Fong. ( Filing Fee PAID $402 receipt number AWIEDC-3854427)(Chester, Anthony) (Additional attachment(s) added on 6/25/2021: # 1 Civil Cover Sheet) (jcl). | |
| | 06/25/2021 | NOTICE Regarding assignment of this matter to Magistrate Judge Stephen C Dries; Consent/refusal forms for Magistrate Judge Dries to be filed within 21 days; the consent/refusal form is available here. Pursuant to Civil Local Rule 7.1 a disclosure statement is to be filed upon the first filing of any paper and should be filed now if not already filed. (jcl) | |
| 2 | 07/22/2021 | REQUEST for Issuance of Summons by Jeremy Chapman, Kemoy Fong, Paul Pilof (Chester, Anthony) | |
| | 07/23/2021 | Summons Issued as to Ford Motor Company. (amb) | |
| 3 | 08/10/2021 | NOTICE of Voluntary Dismissal by Kemoy Fong. (Chester, Anthony) | |
| | 08/10/2021 | DISREGARD. DOCKETED IN ERROR. CASE NOT TERMINATED. Case Terminated pursuant to 3 Notice. (amb) Modified on 8/11/2021 (amb). (Entered: 08/11/2021) | |
| | 08/16/2021 | SECOND NOTICE from the clerk to PLAINTIFFS requesting that the Consent/Refusal form to Magistrate Judge Stephen C Dries be filed within 14 days; the form is available here. Pursuant to Civil Local Rule 7.1 a disclosure statement is to be filed upon the first filing of any paper and should be filed now if not already filed. (kah) | |
| 4 | 08/16/2021 | ANSWER to 1 Complaint, with Jury Demand by Ford Motor Company.(Rajkumar, Roshan) | |
| 5 | 08/16/2021 | NOTICE of Appearance by Roshan N Rajkumar on behalf of Ford Motor Company. Attorney(s) appearing: Roshan N. Rajkumar (Rajkumar, Roshan) | |
| 6 | 08/16/2021 | DISCLOSURE Statement by Ford Motor Company. (Rajkumar, Roshan) | |
| 7 | 08/16/2021 | Magistrate Judge Jurisdiction Form filed by Jeremy Chapman, Paul Pilof. (NOTICE: Pursuant to Fed.R.Civ.P. 73 this document is not viewable by the judge.) (Chester, Anthony) | |
| | 08/17/2021 | NOTICE from the clerk to DEFENDANT requesting that the Consent/Refusal form to Magistrate Judge Stephen C Dries be filed within 21 days; the form is available here. (kah) | |
| 8 | 08/17/2021 | Magistrate Judge Jurisdiction Form filed by Ford Motor Company. (NOTICE: Pursuant to Fed.R.Civ.P. 73 this document is not viewable by the judge.) (Rajkumar, Roshan) | |

Copyright © LexisNexis CourtLink, Inc. All Rights Reserved.
*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JEREMY CHAPMAN, KEMOY FONG, and PAUL PILOF,

                  Plaintiffs,

vs.

FORD MOTOR COMPANY,

                  Defendant.

Case No.:

PLAINTIFFS JEREMY CHAPMNAN, KEMOY FONG, AND PAUL PILOF'S COMPLAINT

1. Jeremy Chapman ("Chapman"), Kemoy Fong ("Fong"), and Paul Pilof ("Pilof") (collectively referred to as "Plaintiffs") bring this Complaint, by and through their attorneys, against Defendant Ford Motor Company, ("Ford" or "Defendant") and alleges upon information and belief as follows:

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiffs' causes of action arise under federal law, i.e. Magnuson-Moss Warranty Act – 15 U.S.C. § 2303 *et seq.*

3. This Court further has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and because Plaintiffs are of different citizenship than Defendant.

4. This Court has supplemental jurisdiction over Plaintiffs' state law claims

arising under Wisconsin statutes and Wisconsin common law pursuant to 28 U.S.C. § 1367, because those claims are interrelated with Plaintiffs' federal law claims and arise from a common nucleus of operative facts such that the adjudication of Plaintiffs' state law claims with Plaintiffs' federal law claims furthers the interest of judicial economy.

5. The venue is proper under 28 U.S.C. § 1391 because the events giving rise to Plaintiffs' cause of action occurred in the State of Wisconsin.

## PARTIES

### Plaintiff Jeremy Chapman

6. Plaintiff Jeremy Chapman is an individual resident and citizen of Wisconsin.

7. Plaintiff Jeremy Chapman purchased a 2017 Ford Focus.

8. Specifically, Chapman entered into a Motor Vehicle purchase contract with Fox Ford J.D. Byrider Milwaukee for the purchase of a 2017 Ford Focus, VIN ending in 9049 (hereinafter referred to as a "Focus" or "Vehicle") with the optional "PowerShift Transmission."

9. The purchase price was approximately $15,995.00.

### Plaintiff Kemoy Fong

10. Plaintiff Kemoy Fong is an individual resident and citizen of Wisconsin.

11. Plaintiff Kemoy Fong purchased a 2019 Ford Fiesta.

12.. Specifically, Fong entered into Motor Vehicle purchase contract with Gordie

Boucher of West Bend, Inc. for the purchase of a new 2019 Ford Fiesta, VIN ending in 9596 (hereinafter referred to as a "Fiesta" or "Vehicle") with the optional "Powershift Transmission."

13. The purchase price with taxes and non-taxable items was approximately $25,033.70.

## Plaintiff Paul Pilof

14. Plaintiff Paul Pilof is an individual resident and citizen of the State of Wisconsin.

15. Plaintiff Paul Pilof purchased a 2017 Ford Focus.

16. Specifically, Pilof entered into a Motor Vehicle purchase contract with Middleton Motors, Inc., dba Middleton Ford for the purchase of a new 2017 Ford Focus, VIN ending in 6734 (hereinafter referred to as a "Focus" or "Vehicle") (collectively with other Plaintiffs' vehicles, "Vehicles") with the optional "Powershift Transmission."

17. The purchase price with taxes and non-taxable items was approximately $20,819.25.

## Defendant Ford Motor Company

18. On information and belief, Defendant Ford Motor Company is a publicly traded corporation organized under the laws of the State of Delaware

19. On information and belief, Defendant Ford Motor Company has its principal

place of business in Wayne County in the State of Michigan.

## FACTUAL ALLEGATIONS

20.    This case arises out of defects and design flaws of motor vehicles purchased by Plaintiffs herein.

21.    According to the Detroit Free Press in an article dated July 11, 2019, its "investigation found that Ford knowingly launched two low-priced, fuel-efficient cars with defective transmissions and continued selling the troubled Focus and Fiesta despite thousands of complaints and an avalanche of repairs." [1]

22.    In addition, the Free Press stated that Ford conducted an internal study in 2012 and "Ford in 2012 acknowledged rushing the cars to production, taking shortcuts to save money and apparently compromising quality protocols[.]"

23.    The Vehicles were defective, and Plaintiffs have suffered damages for Ford's breach of warranty and misrepresentations such as, loss of money, loss of use of the Vehicles, premature deprecation, loss of value, loss of time, aggravation and mental anguish.

24.    Although the transmissions have been the major problems, Plaintiffs have had other problems with the Vehicles. For example, the Ford SYNC, electrical and

---

[1] *See* https://www.freep.com/in-depth/money/cars/ford/2019/07/11/ford-focus-fiesta-transmission-defect/1671198001/

entertainment systems do not function properly.

25. Ford designed, marketed, and represented its PowerShift Transmission as a more advanced and fuel-efficient alternative to a traditional manual or automatic transmission.

26. The PowerShift Transmission was an option that added over $1,000 to the purchase price of each Vehicle.

27. Ford touted that it had designed the Vehicles' computerized "automated manual" transmissions to meet heightened governmental and consumer expectations for fuel economy, performance and efficiency.

28. According to a Ford press release dated March 29, 2010, "PowerShift with dry-clutch facings and new energy-saving electromechanical actuation for clutches and gear shifts saves weight, improves efficiency, increases smoothness, adds durability and is sealed with low-friction gear lubricant for the life of the vehicle. This transmission requires no regular maintenance."[2] Unfortunately, this was not the case.

29. In the owner's manual for Plaintiffs' Vehicles, Ford stated:

**PowerShift Fuel Efficient Transmission**
Your vehicle has been designed to improve fuel economy by reducing fuel usage while coasting or decelerating. When you take your foot off the accelerator pedal and the vehicle begins to slow down, the torque converter clutch locks up and aggressively shuts off fuel flow to the

---

[2] See https://www.prnewswire.com/news-releases/powershift-transmission-production-begins-driving-ford-small-car-fuel-economy-leadership-89373007.html

engine while decelerating. This fuel economy benefit may be perceived as a light to medium braking sensation when removing your foot from the accelerator pedal.

30.   The PowerShift Transmission, however, contains several design and/or manufacturing defects that cause, among other problems, transmission slips, bucking, kicking, jerking, harsh engagement, premature internal wear, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle (Hereinafter the "Transmission Defect").

31.   In addition, the Transmission Defect causes unsafe conditions, including, but not limited to, Vehicles suddenly lurching forward, delayed acceleration, and sudden loss of forward propulsion.

32.   The Transmission Defect also causes premature wear to the Dual Clutch Transmission's clutch plates and other components, which results in premature transmission failure and requires expensive repairs, including transmission replacement.

33.   The PowerShift Transmission contained design and/or manufacturing defects that negatively affect the drivability of the Vehicles.

34.   Ford knew about and concealed the Transmission Defect present in the Vehicles, along with the attendant dangerous safety and drivability problems, from Plaintiffs and hundreds of thousands of other customers, at the time of sale, repair and thereafter. In fact, instead of repairing the defects in the

PowerShift Transmission, Ford either refused to acknowledge their existence, or performed ineffectual software upgrades that simply masked the defects.

35. Plaintiffs relied on the representations contained in Ford's media advertising and printed material when they made the decision to purchase the Vehicles at issue.

36. If Plaintiffs had known about these defects at the time of sale, Plaintiffs would not have purchased the Vehicles or would have paid less for it.

37. Because of their reliance on Ford's omissions and/or misrepresentations, Plaintiffs suffered a loss of money, property, and/or value of each of their respective Vehicles, including, but not limited to, out of pocket costs for the PowerShift Transmission. Additionally, as a result of the Transmission Defect, Plaintiffs were harmed and suffered actual damages because the Vehicles' transmission is substantially certain to fail before its expected useful life has run.

38. The Vehicles were purchased for Plaintiffs' personal use and enjoyment.

39. Plaintiffs' purchase of their respective Vehicle was accompanied by express warranties offered by Ford and extending to Plaintiffs.

40. These warranties were part of the basis of the bargain of Plaintiffs' contracts for purchase of the Vehicles.

41. The basic warranty covered any repairs or replacements needed during the

warranty period due to defects in factory materials or workmanship. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in the warranty guide and the 2017 Ford Focus and 2019 Ford Fiesta owner's manual.

42. Plaintiffs have had problems with her transmission like those mentioned above and her car has never functioned as it should except for brief periods.

43. Although the transmission was the major problem with the Vehicles Plaintiffs - have had numerous other problems with the vehicle resulting in loss of use of the Vehicles, lost time, loss of money and aggravation.

44. Plaintiff Chapman notices that his Vehicle jerks when he pushes the pedal down to accelerate.

45. Additionally, Chapman's Vehicle is slow to move after he attempts to accelerate from a stop light or stop sign.

46. Plaintiff Chapman's issues with his transmission have been persistent since he purchased his Vehicle.

47. Moreover, Chapman has taken his Vehicle in two or three times for repairs on his transmission, but his Vehicle continues to have the same problems with jerking and slow acceleration.

48. Plaintiff Fong's Ford Sync constantly loses connection to his phone.

49. Plaintiff Fong's transmission is faulty, and gears do not shift properly.

50. Plaintiff Pilof notices a studder or shudder upon acceleration from a complete stop or coasting at a low speed.

51. Plaintiff Pilof has been experiencing the problems with the transmission on his Vehicle for years.

52. Plaintiff Pilof has taken his Vehicle in three or four times to repair the transmission, but the problems persist with his Vehicle.

53. Plaintiff Pilof has had a number of situations where he fears for his safety because of how his Vehicle performs.

**COUNT ONE**
**Violation of Warranty under the Magnuson-Moss**
**Warranty Act – 15 U.S.C. § 2303 *et seq.***

54. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

55. The Vehicles are each a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

56. Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

57. Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

58. Defendant's express warranty is a "written warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). Ford provided all

purchasers and lessees of the Class Vehicles with a New Vehicle "Bumper to Bumper" Limited Warranty and a Powertrain Limited Warranty with the purchase or lease of the Class Vehicles.

59. In this Bumper to Bumper Limited Warranty, Ford expressly warranted that its dealers would "without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship" if the vehicle is properly operated and maintained and was taken to a Ford dealership for a warranty repair during the warranty period.

60. Under this "Bumper to Bumper Coverage," Ford promised to cover "all parts on [the] vehicle" "for three years – unless you drive more than 36,000 miles before three years elapse. In that case, your coverage ends at 36,000 miles." Furthermore, under the Powertrain Limited Warranty, Ford expressly warranted that it would cover listed powertrain components under its Powertrain Limited Warranty, including transmission components (including the "Transmission: all internal parts, clutch cover, seals and gaskets, torque converter, transfer case (including all internal parts), transmission case, transmission mounts") "for five years or 60,000 miles, whichever occurs first."

61.   On information and belief, Defendant breached the express warranty by:

      a.   Extending a 3 year/36,000 mile Bumper to Bumper Limited Warranty and 5 year/60,000 mile Powertrain Limited Warranty with the purchase or lease of the vehicles, thereby warranting to repair or replace any part defective in material or workmanship, including the subject transmission, at no cost to the owner or lessee;

      b.   Selling and leasing vehicles with transmissions that were defective in material and workmanship, requiring repair or replacement within the warranty period;

      c.   Refusing to honor the express warranty by repairing or replacing, free of charge, the transmission or any of its component parts or programming and instead charging for repair and replacement parts; and

      d.   Purporting to repair the transmission and its component parts by replacing the defective transmission components with the same defective components and/or instituting temporary fixes, on information and belief, to ensure that the Transmission Defect manifests outside of the vehicle's express warranty period.

62.   Furthermore, Defendant's impliedly warranted that the Vehicles were of

merchantable quality and fit for such use.

63.   This implied warranty included, among other things: (i) a warranty that the Vehicles and their transmissions were manufactured, supplied, distributed, and/or sold by Ford were safe and reliable for providing transportation; and (ii) a warranty that the Vehicles and their transmissions would be fit for their intended use while the Vehicles were being operated.

64.   Contrary to the applicable implied warranties, the Vehicles and their transmissions at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs with reliable, durable, and safe transportation.

65.   Instead, the Vehicles were defective, including, but not limited to, the defective design of their transmissions.

66.   Defendant's breach of express and implied warranties has deprived Plaintiffs of the benefit of their bargain.

67.   The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25,000. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

68.   Defendant has been afforded a reasonable opportunity to cure its breach, including when Plaintiffs brought their Vehicles in for diagnoses and repair

of the transmission.

69.    As a direct and proximate cause of Defendant's breach of express and implied warranties, Plaintiffs sustained damages and other losses in an amount to be determined at trial.

70.    Defendant's conduct damaged Plaintiffs, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

71.    Additionally, Ford breached the express warranty by performing illusory repairs. Rather than repairing the Vehicles pursuant to the express warranty, Ford falsely informed [Plaintiff(s)] that there was no problem with their Vehicles, performed ineffective software updates, or replaced defective components in the PowerShift Transmissions with equally defective components, without actually repairing the Vehicles.

72.    As a result of Defendant's violations of the Magnuson-Moss Warranty Act as alleged herein, [Plaintiff(s)] have incurred damages.

## COUNT TWO
## VIOLATIONS OF WIS. STATS. § 100.18 *ET SEQ.*

73.    Plaintiffs reallege and adopt all of the foregoing relevant paragraphs contained in this Complaint.

74.    Defendant is a "person, firm corporation or association" as defined by Wis. Stat. § 100.18(1).

75.   Defendant is a "seller" under Wis. Stat. § 100.18 by advertising, offer for sale, selling, leasing, and/or distributing the Vehicles in the United States, including Wisconsin.

76.   Plaintiffs Chapman and Fong are members of "the public" as defined by Wis. Stat. § 100.18(1), and Plaintiffs Chapman and Fong purchased one or more Vehicles.

77.   Wis. Stat. § 100.18(1) prohibits a "representation or statement of fact which is untrue, deceptive, or misleading."

78.   As set forth above, Defendant's advertisements grossly misrepresent the Vehicles' quality.

79.   Such advertising is untrue, deceptive, or misleading.

80.   In the course of the Defendant's business, they willfully failed to disclose and actively concealed that the transmission was defective, as described above.

81.   Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Vehicles have characteristics, uses, benefits, and qualities which they did not have; representing that the Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a

representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

82.   These representations were made with the intent to induce consumers to purchase a vehicle from Defendant.

83.   In purchasing the Vehicles, Plaintiffs Chapman and Fong were deceived by the Defendant's failure to disclose that the transmissions systems in the Vehicles were defective, as described above.

84.   Plaintiffs Chapman and Fong reasonably relied upon the Defendant's false misrepresentations.

85.   Plaintiffs Chapman and Fong had no way of knowing that the Defendant's representations were false and gravely misleading.

86.   Defendant's failure to disclose and active concealment of the dangers and performance issues with the Vehicles were material to Plaintiffs Chapman and Fong.

87.   As alleged herein, Defendant engaged in extremely sophisticated methods of deception.

88.   Plaintiffs Chapman and Fong did not, and could not, unravel Defendant's deception on their own.

89.  Had they been aware of the faulty transmissions and other issues with their Vehicles, Plaintiffs Chapman and Fong would have paid less for the Vehicles or would not have purchased or leased them at all.

90.  The Defendant's actions as set forth above occurred in the conduct of trade or commerce.

91.  The Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable Plaintiffs Chapman and Fong.

92.  Defendant intentionally and knowingly misrepresented material facts regarding the vehicle with an intent to mislead Plaintiffs Chapman and Fong.

93.  Defendant knew or should have known that its conduct violated the Wis. Stat. § 100.18(1).

94.  The Defendant's conduct proximately caused injuries to Plaintiffs Chapman and Fong.

95.  Plaintiffs Chapman and Fong were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of the Defendant's conduct in that Plaintiffs Chapman and Fong overpaid for their vehicle and did not receive the benefit of their bargain, and their Vehicles have suffered a diminution in value.

96.  These injuries are the direct and natural consequence of the Defendant's misrepresentations and omissions.

97. The Defendant's violations present a continuing risk to Plaintiffs Chapman and Fong as well as to the general public.

98. The Defendant's unlawful acts and practices complained of herein affect the public interest.

99. As a result of Defendants violations stated herein, pursuant to Wis. Stat. § 100.18(11)(b)(2), Plaintiffs Chapman and Fong are entitled to damages and other relief, including, but not limited to, court costs and attorney's fees.

## COUNT THREE
### Breach of Express Warranty

100. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

101. Defendant expressly warranted that the Vehicles were of high quality and, at minimum, would actually work properly.

102. Defendant also expressly warranted that they would repair and/or replace defects in material and/or workmanship free of charge that occurred during the new vehicle and certified preowned ("CPO") warranty periods.

103. Plaintiffs relied on Defendant's express warranties when purchasing their Vehicles.

104. Defendant breached this warranty by selling to Plaintiffs the Vehicles with known Transmission Defects, which are not of high quality, and which are predisposed to fail prematurely and/or fail to function properly.

105.  As a result of Defendant's actions, Plaintiffs have suffered economic damages including, but not limited to, costly repairs, loss of vehicle use, substantial loss in value and resale value of the Vehicles, and other related damage.

106.  Defendant's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here.

107.  Specifically, Defendant's warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect.

108.  The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiffs.

109.  Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendant.

110.  A gross disparity in bargaining power existed between Defendant and Plaintiffs, and Defendant knew or should have known that the Vehicles were defective at the time of sale.

111.  Plaintiffs have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

## COUNT FOUR
## BREACH OF THE IMPLIED
## WARRANTY OF MERCHANTABILITY

112. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

113. Wis. Stat. § 402.314 and Section 2-314 of the Uniform Commercial Code provides that there is an implied warranty of merchantability with respect to goods purchased.

114. Among the warranty included within the implied warranty of merchantability is that the goods would pass without objection in the trade under the contract description.

115. For the reasons set forth above, the vehicle would not pass without objection in the trade because the Vehicles' transmissions suffered serious defects.

116. As a direct and proximate result of the breach of said warranties, Plaintiffs were injured, and are entitled to damages.

117. Defendant's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here.

118. Defendant's warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the defect.

119. The time limits contained in Defendant's warranty period were also

unconscionable and inadequate to protect Plaintiffs.

120. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendant.

121. A gross disparity in bargaining power existed between Defendant and Plaintiffs, and Defendant knew or should have known that the vehicle was defective at the time of sale. Plaintiffs have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

## COUNT FIVE
### Unjust Enrichment

122. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

123. As a direct and proximate result of Defendant's failure to disclose known defects and material misrepresentations regarding known defects, Defendant has profited through the sale and lease of said vehicle.

124. Although the Vehicles were purchased through Defendant's agents, the money from the Vehicles' sales flows directly back to Defendant.

125. Additionally, as a direct and proximate result of Defendant's failure to disclose known defects and material misrepresentations regarding known defects in the Vehicles, Plaintiffs have Vehicles that require high-cost repairs that can and therefore have conferred an unjust substantial benefit upon

Defendant.

126. Plaintiffs overpaid for the Vehicles and/or would not have purchased the Vehicles at all.

127. It is inequitable for Defendant to retain these benefits.

128. Defendant has therefore been unjustly enriched due to the known defects in the Vehicles through the use of funds that earned interest or otherwise added to Defendant's profits when said money should have remained with Plaintiffs.

129. As a result of the Defendant's unjust enrichment, Plaintiffs suffered damages.

## COUNT SIX
### Fraudulent Concealment

130. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

131. Defendant concealed and suppressed material facts regarding the Vehicles—particularly, that the Vehicles had defective transmissions that caused the Vehicles to shudder, studder, lurch, or fail to accelerate at times, thus causing significant performance and safety issues.

132. Defendant took steps to ensure that it, its employees, and/or agents did not reveal the known defects with the Vehicles to regulators or consumers.

133. Defendant had a duty to disclose the defects with the Vehicles because Defendant:

   a.   Had exclusive and/or far superior knowledge and access to the

21

> facts, and Defendant knew the facts were not known to or reasonably discoverable by the Plaintiffs.
>
> b.    Intentionally concealed the foregoing from Plaintiffs; and/or
>
> c.    Made incomplete representations about the safety and performance of the Vehicles, while purposefully withholding material facts from the Plaintiffs that contradicted these representations.

134.   These omitted and concealed facts were material because they would typically be relied on by a person purchasing, leasing or retained a new or used motor vehicle, and because they directly impact the value of the Vehicles purchased or leased by Plaintiffs.

135.   Whether a manufacturer's products are safe and perform properly, and whether that manufacturer stands behind its products are material concerns to a consumer.

136.   Plaintiffs trusted Defendant not to sell or lease vehicles to them that were defective.

137.   Defendant concealed and suppressed these material facts in order to falsely assure purchasers and consumers that the vehicles it sold were capable of performing safely and properly, as represented by Defendant and reasonably expected by consumers.

138.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and to avoid recalls that could harm the brand's image and cost Defendant money—and Defendant did so at the expense of Plaintiffs.

139.   Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.

140.   Because of the concealment and/or suppression of the facts, Plaintiffs sustained damaged because they own vehicles that diminished in value as a result of Defendant's concealment of, and failure to timely disclose, the serious defects with the Vehicles and the serious safety and performance issues causes by Defendant's conduct.

141.   The actual performance and safety problems with the transmissions was material to Plaintiffs' transactions.

142.   Had they been aware of the faulty transmissions and other issues with their Vehicles, Plaintiffs would have paid less for the Vehicles or would not have purchased or leased them at all.

143.   Plaintiffs did not receive the benefit of their bargain as a result of Defendant's fraudulent concealment.

144.   The value of the Vehicles has diminished as a result of Defendant's fraudulent concealment of the faulty transmissions or other issues with the Vehicles and

has made any reasonable consumer reluctant to purchase the Vehicles, let alone pay what otherwise would have been fair market value for the Vehicles.

145. Accordingly, Defendant is liable for Plaintiffs' damages in an amount to be proven at trial.

146. Defendant's acts were done maliciously, oppressively, deliberately, with the intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being, and with the aim of enriching Defendant.

147. Defendants' conduct, which exhibits a high degree of reprehensibility, being intentional, continuous, placing others at risk of harm, and affecting public safety, warrants an assessment of punitive damages in an amount sufficient to deter similar conduct in the future, which amount is to be determined according to proof.

### RELIEF REQUESTED

148. Plaintiffs request the Court to enter judgment against Defendant, as follows:

    a.     An order enjoining Defendant from further deceptive distribution, sales, and lease practices with respect to the Vehicle, and to remove and replace Plaintiffs' transmissions with a suitable alternative product; enjoining Defendant from selling the vehicle with the misleading information; compelling Defendant to provide Plaintiffs with a replacement transmission

that does not contain the defects alleged herein; and/or compelling Defendant to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged;

b.  A declaration requiring Defendant to comply with the various provisions of the state and federal consumer protection statutes herein alleged and to make all the required disclosures;

c.  An award to Plaintiffs for compensatory, exemplary, statutory, and punitive damages, including interest, and including the additional purchase cost of the PowerShift Transmission option, in an amount to be proven at trial;

d.  Any and all remedies provided pursuant to the state and federal consumer protection statutes herein alleged;

e.  A declaration that Defendant must disgorge, for the benefit of Plaintiffs, all or part of the ill-gotten profits it received from the sale or lease of its vehicle, or make full restitution to Plaintiffs;

f.  An award of attorneys' fees and costs, as allowed by law;

g.  An award of pre-judgment and post-judgment interest, as provided by law;

h.  Leave to amend the Complaint to conform to the evidence

produced at trial; and

i.       Such other relief as may be appropriate under the circumstances.

## JURY DEMAND

149.   Plaintiffs demand a trial by jury of any and all issues in this action so triable.


Dated: June 25, 2021                            Respectfully submitted,

                                                **Kazerouni Law Group, APC**

                                                By: /s/ Anthony P. Chester
                                                    Anthony P. Chester
                                                    Kazerouni Law Group, APC
                                                    120 South 6th Street, Suite 2050
                                                    Minneapolis, MN 55402
                                                    Phone: (952) 225-5333
                                                    Email: tony@kazlg.com
                                                    *Attorneys for Plaintiffs*